**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JEFFREY STEVEN CLAY,

    Defendant - Appellant.

No. 24-2057

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:22-CR-01841-KG-1)**
_____

Brock Morgan Benjamin, Benjamin Law Firm, El Paso, TX (Marshall J. Ray, Law Offices of Marshall J. Ray, Albuquerque, NM, with him on the briefs), for Defendant-Appellant

James Robert Wolfgang Braun, Assistant United States Attorney, Office of the United States Attorney, District of New Mexico, Albuquerque, NM (Alexander M.M. Uballez, United States Attorney, and Matilda McCarthy Villalobos, Assistant United States Attorney, Office of the United States Attorney, Las Cruces, NM, with him on the brief), for Plaintiff-Appellee

_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

    A jury found that Defendant-Appellant Jeffrey Steven Clay induced a woman into his car in El Paso, Texas, drove her to his house in Anthony, New Mexico, and

violently sexually assaulted her there. The jury convicted Clay of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and transporting an individual across state lines with the intent to engage in illegal sexual activity, in violation of 18 U.S.C. § 2421(a). The district court sentenced Clay to 360 months' imprisonment.

Clay appeals and asks us to reverse his convictions and remand for a new trial, because, he says, the district court made erroneous evidentiary rulings regarding trial testimony and the scope of questioning. Clay argues that the court erred in relation to the testimony of Jane Doe 1, the victim in this case, who testified that Clay kidnapped and sexually assaulted her, and Jane Doe 2, Clay's adopted daughter, who testified that Clay had repeatedly sexually assaulted her in the past.

We affirm. First, the district court did not violate Clay's constitutional rights when it precluded Clay from adducing evidence of Doe 1's prior prostitution to show that Doe 1 consented to the sexual encounter with Clay. Under our precedent, such evidence is not probative of the victim's consent such that the Constitution mandates its admission. Second, the district court did not abuse its discretion under Federal Rules of Evidence 413 or 403 by permitting Doe 2 to testify that Clay previously sexually assaulted her. The court correctly held that Rule 413 does not call for a "categorical approach" in assessing its application—rather, Rule 413 applies and permits evidence when the defendant's *conduct* underlying the charges meets the Rule's definition of "sexual assault." And the court did not abuse its discretion in concluding that the probative value of Doe 2's testimony was not substantially outweighed by its unduly prejudicial effect. Finally, Clay waived his arguments that

2

the district court erred in preventing him from cross-examining Doe 2 with regard to certain topics.

## I.

### A.[1]

On August 4, 2021, Jane Doe 1 and her husband went to a bar in El Paso, Texas, to celebrate his getting a new job. During the night, Doe 1 became intoxicated and began craving methamphetamine. Knowing her husband would not approve of her using, Doe 1 left the bar to find her friend who Doe 1 believed would have methamphetamine.

After receiving a ride a part of the way to her intended destination of Octavia Street in El Paso, Doe 1 walked to a bus stop to take the bus the rest of the way there. As she waited, a vehicle stopped in the road in front of her. The driver, Clay, rolled down his window, and Doe 1 asked if he could drive her the rest of the way. Clay said he would, and so Doe 1 got into the car and put $10 in the center console as gas money.

Clay did not take Doe 1 to her friend's house. Instead, Clay passed Octavia Street and entered Interstate 10. Doe 1 became scared and felt trapped. Her cellphone fell under the car seat, and she could not retrieve it. Doe 1 tried to keep Clay calm by having casual conversation with him; she was afraid to do anything that might anger him and cause "a reaction toward [her]." App'x Vol. II at 494.

---

[1] The facts in this section come from Doe 1's testimony at trial. *See United States v. Palms*, 21 F.4th 689, 693 n.1 (10th Cir. 2021).

Clay drove the two to a dark and isolated house in Anthony, New Mexico, which Clay said was his. Clay took Doe 1 inside, gave her alcohol, and turned on country music. Clay then took Doe 1 outside to his pool area and said, "You can get in." *Id.* at 497. Doe 1 asked Clay if she could use his phone, but Clay told her he did not have one. Doe 1 asked Clay if he would retrieve her phone from his car. Clay then left the pool area, and Doe 1 believed that Clay was going to get her phone. Too fearful to attempt an escape because it was dark, she had no phone, she did not know where she was, and she did not know what Clay would do to her if he caught her trying to escape, Doe 1 got in the pool.

When Clay returned, he entered the pool with Doe 1 and tried to kiss her, but she pushed him away. Clay became upset, hit Doe 1 in the face, turned her around, and handcuffed her with her hands behind her back, pushing her face underwater in the process. Doe 1 asked Clay to let her go, but he refused, telling her that this is what she got for misleading him and being a "bad girl." *Id.* at 500–01. Clay told her that she had to learn to be a "good girl." *Id.*

Clay then removed Doe 1 from the pool, took her to his bedroom, and pushed her down onto the bed. Clay began kissing a still-handcuffed Doe 1 on her face, her neck, her breasts, and her genitals. Clay then began to place his finger into Doe 1's vagina, and Doe 1 asked Clay if he would remove the handcuffs. When Clay loosened one of the handcuffs, Doe 1 unsuccessfully tried to attack Clay. Clay then punched Doe 1 in the face and tightened the handcuffs.

4

Clay told Doe 1 that she was not making it enjoyable for him, so he went and retrieved personal lubricant. Clay then began vaginally penetrating Doe 1 with his penis while Doe 1 cried and begged him to stop. Clay told her that she "deserve[d]" this, that this was her punishment for being bad, and that she had to "learn how to be a good girl." *Id.* at 505.

Clay then flipped Doe 1 onto her stomach. He began to penetrate her anus with his penis and continued instructing her to "be a good girl." *Id.* at 505–06. Clay then flipped Doe 1 back onto her back, inserted his penis into her mouth, and ejaculated.

Clay then took Doe 1 to get dressed. Clay agreed to unhandcuff Doe 1 if she promised to be a "good girl." *Id.* at 508–09.

Once Doe 1 got dressed, the two left the house and drove back to El Paso. When Clay exited the freeway in El Paso and stopped at a stoplight, Doe 1 escaped. Doe 1 jumped out of Clay's truck and ran into a nearby convenience store, told the cashier that she had been kidnapped and raped, and asked the cashier to call 911.

**B.**

In November 2022, a federal grand jury charged Clay with kidnapping Doe 1 and transporting her in interstate commerce, in violation of 18 U.S.C. § 1201(a)(1), and transporting Doe 1 in interstate commerce with intent that any sexual activity for which any person can be charged with a criminal offense would occur, in violation of 18 U.S.C. § 2421(a). Clay's case proceeded to trial.

At trial, Clay's theory of the case was that his encounter with Doe 1 was the result of Doe 1 soliciting him for commercial sex. Doe 1 only accused Clay of kidnapping and sexually assaulting her, the theory went on, because Clay refused to pay her more money than the two had originally agreed upon for the commercial sex.

Doe 1 testified at trial to the facts recounted above, and Clay cross-examined her. It had been disclosed to Clay in pre-trial discovery that Doe 1 had previously engaged in commercial sex work. So, Clay asked Doe 1 if she had "offer[ed] to have sex with [ ] Clay for money" that night, to which she responded, "No." App'x Vol. II at 562–63. Due to one of the district court's pre-trial rulings, however, Clay was not permitted to ask Doe 1 (or otherwise adduce evidence) about her prior work as a commercial sex worker. Clay had unsuccessfully urged the court pre-trial to permit evidence that Doe 1 "had engaged in prostitution in the past" because, Clay said, it supported his theory of consent on the night in question. App'x Vol. VI at 1.

At trial, the government also called Jane Doe 2, Clay's adopted daughter, as a Federal Rule of Evidence 413 witness to testify that Clay had sexually assaulted her in the past. She did so over Clay's pre-trial objections to the testimony under Rule 413 and Rule 403. We now recount Doe 2's testimony.

Doe 2 testified that, sometime in 2012, Clay and his wife adopted her. At that time, Doe 2 was 14 years old, and she had just spent four years in foster care. When Doe 2 was about 15 years old, she had trouble sleeping, and her therapist recommended her parents sit in the room with her while she fell asleep. When Clay stayed in her room while she fell asleep, he sexually assaulted her.

6

The first time Clay sexually assaulted Doe 2, she was about 15-and-a-half years old, and he forced her hand to go up and down on his penis until he ejaculated. Clay told Doe 2 she was a "good girl." App'x Vol. II at 348. The second time Clay sexually assaulted Doe 2, he inserted his penis into her mouth and moved her head back and forth until he ejaculated in her mouth. Clay forced Doe 2 to perform oral sex on him multiple times and would often tell her that she was a "good girl." *Id.* at 349–50. The next time he assaulted her, he brought lubrication jelly and told her he was going to put his penis in her anus. Clay then did so, which caused Doe 2 injuries and bleeding. The time after that, Clay again brought his lubrication jelly but told Doe 2 they were "going to try a different hole." *Id.* at 352. Clay then vaginally penetrated Doe 2 with his penis. Clay told Doe 2 that she was a "good girl" as he did so. *Id.* at 353–54.

In all, Clay penetrated Doe 2 with his penis three times and forced Doe 2 to perform oral sex on him twice when she was a minor. Clay made Doe 2 touch his penis and he touched her vagina with his hands "too many times to count." *Id.* at 356. This abuse continued for about a year, until 2014, when Doe 2 finally reported it. Doe 2 was removed from her home and placed into a "girls' home" for about six weeks. *Id.* at 357–58. Having already spent four years in foster care, Doe 2 felt lonely and scared about what might happen to her.

While Doe 2 lived at the girls' home, Clay dropped off her computer and began communicating with her via email. Clay told Doe 2 that her grandparents' health was declining, that her mom was depressed, and that if she did not recant her

7

statements of the sexual assaults, then her parents would lose their jobs, she would never be allowed to go back home, and she would age out of foster care with no family. Doe 2 "was terrified" by Clay's emails, and as a result, Doe 2 "lied and said that nothing happened," that Clay had never sexually assaulted her. *Id.* at 359–60. After Doe 2 recanted, she returned to living with the Clays. Clay did not sexually assault her again as a minor.

In April 2021, when Doe 2 was an adult and seven months pregnant (and around five months before Clay sexually assaulted Doe 1), Clay sexually assaulted Doe 2 again. Doe 2 and Clay had been in an argument related to Clay's new girlfriend. Clay burst into Doe 2's house, grabbed her by the arm, and pushed her into her bedroom. Clay threw Doe 2 on her bed, ripped off her underwear, and forced his penis into her vagina. Clay ejaculated, put his pants back on, and left. Doe 2 did not tell anyone right away about Clay sexually assaulting her, because she was afraid he would hurt her, her baby, or her family.

Clay testified to his version of events. With respect to his encounter with Doe 1, he testified that Doe 1 requested a ride from him, and so he picked her up. He said he originally thought the two would have some drinks and hang out, but after the two crossed into New Mexico and were close to Clay's house, Doe 1 solicited commercial sex from him, and he agreed. Clay testified that they then went to his house and eventually engaged in consensual oral, vaginal, and anal sex in his bedroom. Clay said that Doe 1 saw the handcuffs on his nightstand and asked him if he wanted to use them for an additional fee, and he agreed.

8

Clay then testified that after they engaged in sex, Doe 1 began searching for drugs in his house, demanded that Clay help her obtain drugs, and then tried to raise the price upon which they agreed for the sex and threatened to accuse Clay of sexual assault if he did not oblige. Clay said the two left in his car to find an ATM so that he could pay her. They then drove back to El Paso, where Doe 1 left the car in search of drugs, and Clay drove off.

Clay also denied ever sexually assaulting Doe 2. He answered, "Absolutely not," when asked directly, and he testified that there had been "no evidence of it" and that "she recanted her testimony." App'x Vol. I at 99–100.

After a four day trial, the jury found Clay guilty on both counts. Clay timely appealed.

## II.

We review a district court's evidentiary decisions for abuse of discretion. *United States v. A.S.*, 939 F.3d 1063, 1071 (10th Cir. 2019). "A district court abuses its discretion if its ruling was either based on an error of law or a clearly erroneous finding of fact, or manifests a clear error in judgment." *United States v. Burgess*, 99 F.4th 1175, 1183 (10th Cir. 2024) (internal quotation marks omitted). As such, "we review the district court's compliance with the legal requirements of the statute or rule under which it made its ruling de novo and its underlying factual findings for clear error." *United States v. Martinez*, 92 F.4th 1213, 1227 (10th Cir. 2024) (brackets and quotation omitted). That is, we will reverse a district court's decision "only if the court exceeded the bounds of permissible choice, given the facts and the

applicable law in the case at hand." *United States v. Silva*, 889 F.3d 704, 709 (10th Cir. 2018) (quotation omitted).

## III.

We begin with Clay's arguments directed to Jane Doe 1's testimony. On appeal, Clay contends that the district court erred in excluding evidence of Jane Doe 1's "activities as a prostitute" under Federal Rule of Evidence 412.[2] Aplt. Br. at 22. Specifically, during an interview with law enforcement, Doe 1 stated that she had previously engaged in commercial sex work. Clay argues that the district court's exclusion of such evidence violated his Confrontation Clause and due process rights. Because this challenge is based on a constitutional objection, we review the district

---

[2] Clay suggested in his opening brief that the district court excluded evidence that Doe 1 "had been arrested and *convicted* of the offense of prostitution in Texas." Aplt. Br. at 2 (emphasis added). The one record reference Clay provides for evidence of a "conviction" purportedly being presented to the district court and excluded is his pre-trial motion in limine regarding this evidence. *See id.* (citing App'x Vol. VI at 1–6); *see also* Oral Arg. Audio at 31:42–33:06. But Clay's "Motion in Limine to Permit Evidence of Alleged Victim's Prostitution" made no mention of any "conviction" for prostitution that Doe 1 received. App'x Vol. VI at 1–6 (formatting altered). Instead, Clay more vaguely sought to adduce evidence about Doe 1's "involvement in prostitution" and "history of prostitution." *Id.* at 4.

By failing to present it to the district court (or at least tell us where he did so), Clay forfeited any argument that the district court should have admitted evidence of a prostitution *conviction* of Doe 1, specifically, as contrasted with Doe 1's prostitution *activities*, more generally. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (explaining forfeiture and how it applies even "when a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial" (internal quotation marks omitted)). And Clay has fully waived appellate consideration of such an argument by not arguing for plain-error review. *See id.* We have no occasion to consider how the result here might change if Clay had sought to elicit evidence of a *conviction* of Doe 1 for prostitution, in particular, rather than Doe 1's prior acts of prostitution.

court's ruling excluding this evidence de novo. *United States v. Pablo*, 696 F.3d 1280, 1297 (10th Cir. 2012).

## A.

Under Federal Rule of Evidence 412, "[e]vidence offered to prove that a victim engaged in other sexual behavior" and "[e]vidence offered to prove a victim's sexual predisposition" are "not admissible in any civil or criminal proceeding involving alleged sexual misconduct."[3] Fed. R. Evid. 412(a). The purpose of this rule is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping." Fed. R. Evid. 412, advisory committee notes to 1994 amendments. There is, however, an exception in criminal cases when the exclusion of the evidence "would violate the defendant's constitutional rights."[4] Fed. R. Evid. 412(b)(1)(C).

---

[3] In a single paragraph, Clay seems to argue that this case was not a "criminal proceeding involving alleged sexual misconduct" under Rule 412. This three-sentence argument, which does not so much as quote this (or any) language in Rule 412 or cite any authority interpreting it, and merely cross-references Clay's arguments relating to Rule 413, which does not include this language, is so cursorily developed that we deem it waived. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (cleaned up)); *Thomas v. Gibson*, 218 F.3d 1213, 1224 n.9 (10th Cir. 2000) (finding waiver where appellant made "three-sentence argument, which fail[ed] to cite, let alone apply, the controlling framework").

[4] There is also an exception for "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent." Fed. R. Evid. 412(b)(1)(B). Clay suggests that this provision permitted his proposed evidence of Doe 1's prior acts of prostitution, because Clay sought to demonstrate her consent to have sex with him. But this exception only allows proving consent via "evidence of specific instances of a victim's sexual behavior *with respect to the person accused of the sexual*

11

Defendants have constitutional rights to due process and to confront witnesses against them. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This Due Process Clause provides a defendant with the right to a fair trial. *See, e.g.*, *Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This Confrontation Clause guarantees defendants "an opportunity for effective cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (emphasis deleted) (quotation omitted). But "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Id.* "Together, the Fifth and Sixth Amendments provide defendants with the right to present a defense." *United States v. Palms*, 21 F.4th 689, 702–03 (10th Cir. 2021) (internal quotation marks omitted).

As relevant here, "[p]ursuant to the Confrontation Clause and the Due Process Clause, sexual behavior evidence 'may be required to be admitted . . . where relevant and probative on a central issue of sexual offense charges.'"[5] *Id.* at 703 (ellipsis in

---

*misconduct*." *Id.* (emphasis added). Clay never argues that he wished to bring in prior instances of Doe 1 engaging in commercial (or any) sex *with Clay himself.*

[5] We have observed that the "class of cases in which evidence otherwise barred by the rape shield statute has been deemed to be constitutionally compelled is

original) (quoting *A.S.*, 939 F.3d at 1072). But we have held that the exclusion of sexual behavior evidence that was, "at best, only marginally relevant" to the issues at trial did not violate the defendant's rights under the Fifth and Sixth Amendments. *United States v. Powell*, 226 F.3d 1181, 1199 (10th Cir. 2000).

**B.**

Clay claims that the exclusion of evidence that Jane Doe 1 participated in commercial sex work before she met him violated his constitutional rights to a fair trial, to confront witnesses against him, and to present a full defense. Specifically, Clay contends that such evidence should have been permitted "given his defense of consent"—that is, because such evidence had the tendency to "demonstrate her consent to [have] sex with [him]" and "explain why she got into [his] car and travelled across state lines with" him. Aplt. Br. at 21, 24.

---

restricted to those which demonstrate a theory of witness bias or motive to lie." *A.S.*, 939 F.3d at 1073 (quotation omitted). To that end, Clay claims, "Here, as [ ] Clay argued below, [Doe 1] had a motive to lie, and the evidence [ ] Clay would have offered would have served as a powerful tool to undermine her credibility and thus confront her in a constitutionally adequate fashion." Aplt. Br. at 28.

This argument—which is not listed among the statement of issues on appeal and lacks any supporting explanation of *why* Doe 1 had such a motive or *how* her credibility would have been undermined—is inadequately briefed, and thus waived. *See Cooper*, 654 F.3d at 1128; *United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) (finding waiver where appellant made argument in "a couple of stray sentences" and did not "identify [it] in his statement of appellate issues, much less elaborate in the brief on its substantive premises"). And, although Clay tries to do so here, appellants cannot adequately present issues for our review "by incorporating [ ] claims by reference to . . . records from the court below," *United States v. Patterson*, 713 F.3d 1237, 1250 (10th Cir. 2013), by scattering additional "traces of argument" across other sections of their opening brief, *see United States v. Fisher*, 805 F.3d 982, 991 (10th Cir. 2015), or by further developing claims in a reply brief, *see Martinez*, 92 F.4th at 1233 n.4.

Clay's argument is not persuasive. Under our caselaw, evidence that a victim previously engaged in commercial sex with other people is not probative of whether the victim consented to commercial sex with the defendant (or any other person) on a later occasion, such that the Constitution requires its admission. *See Palms*, 21 F.4th at 703 ("Evidence that a sex trafficking victim previously engaged in prostitution is irrelevant to whether that victim was forced or coerced into working as a prostitute at a later date. . . . Even if [the victim] participated in commercial sex work in 2017 and knew how to post ads for commercial sex, that does not tend to prove [the defendant] did not force her to engage in prostitution during the period charged."). And Clay provides no reason to think that this logic does not extend to a victim's prior acts of consensually "g[etting] into a car with a complete stranger" to have sex with them. *Cf.* Aplt. Br. at 26. It directly follows from our precedent that evidence that a victim consensually entered someone else's car to engage in commercial sex before is not relevant to whether the victim consensually entered the defendant's car to engage in commercial sex at a later date, to the point that exclusion violates the Constitution. As Clay put it in the district court, any such relevance argument is just a narrower band of his broader argument that the entire "encounter between [ ] Clay and [Doe 1] was consensual and the result of [Doe 1]'s offer of prostitution services." App'x Vol. VI at 2. And at oral argument on appeal, Clay's counsel confirmed that this evidence was offered to prove that Clay and Doe 1's encounter "was a consensual encounter for prostitution." Oral Arg. Audio at 6:10–16. Ultimately, Clay's claim fails to stray from the once-a-prostitute-always-a-prostitute theory of relevance that we have held

14

does not constitutionally compel admission of sexual behavior evidence.

Clay has not presented a viable claim of error by the district court in excluding evidence of Doe 1's prior acts of prostitution. We affirm the court's decision.

## IV.

We turn to Clay's evidentiary challenges to Jane Doe 2's testimony. The jury heard Doe 2 testify that Clay had previously, and repeatedly, sexually assaulted her. Clay argues that the district court should never have allowed Doe 2 to testify. Clay asserts that (A) the text of Federal Rule of Evidence 413 did not allow the court to admit Doe 2's testimony in this case, and (B) even if Doe 2's testimony could come in under Rule 413, the court should have excluded her testimony under Rule 403.

## A.

Clay first argues that the district court erred in admitting Doe 2's testimony pursuant to Rule 413 because the "[t]ext of [Rule] 413 did not permit inclusion in this case." Aplt. Br. at 30. Specifically, Clay asserts that his is not a case in which "the defendant is accused of a sexual assault" within the meaning of Rule 413, which is a requirement for Rule 413 to apply. Fed. R. Evid. 413(a). Because Clay's challenge to the district court's decision to admit the testimony turns on an interpretation of the Federal Rules of Evidence, we review the district court's decision de novo. *United States v. Sturm*, 673 F.3d 1274, 1283 (10th Cir. 2012).

## 1.

Federal Rule of Evidence 413 provides an exception to the general bar on propensity evidence: "In a criminal case in which a defendant is accused of a sexual

15

assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). Rule 413 defines "sexual assault" as follows:

> In this rule . . . , "sexual assault" means a crime under federal law or under state law . . . involving:
>
> (1) any conduct prohibited by 18 U.S.C. chapter 109A;
>
> (2) contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus;
>
> (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body;
>
> (4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or
>
> (5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4).

Fed. R. Evid. 413(d).

Put all together, to establish admissibility under Rule 413, the government must show that (1) the defendant is currently accused of a sexual assault, (2) the proffered prior acts evidence is of the defendant's commission of another sexual assault, and (3) the proffered evidence is relevant. *See United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998). Clay's argument implicates only the first prong.

## 2.

Clay urges us, as he did the district court, to read Rule 413 as requiring a "categorical approach" to determining whether a defendant "is accused of a sexual assault" so as to trigger Rule 413's application. Aplt. Br. at 31. Clay contends that Rule 413 permits evidence *only* in cases where there is "a formal charge of sexual

16

assault," *id.*, that is, where the crime charged has as "a necessary component of conviction" a finding of "sexual assault," *id.* at 35. In other words, Clay's argument is that Rule 413 is concerned about whether a "sexual assault" appears in *laws*, as an element of a charged crime.

The district court disagreed, looking to Clay's "activity" giving rise to the charges in this case and holding that Clay's conduct fell within Rule 413's definition of "sexual assault." App'x Vol. I at 32–33. The district court was correct. Rule 413 applies when the specific circumstances underlying the defendant's criminal charges meet the Rule's definition of "sexual assault." Rule 413's application does not turn on whether the crime charged includes "sexual assault" as an element of the offense.

This Court has already rejected the argument that the specific crimes charged in an indictment govern whether Rule 413 applies in a given case. In *United States v. Batton*, 602 F.3d 1191 (10th Cir. 2010), the defendant was charged under 18 U.S.C. § 2423(a) with knowingly transporting a minor across state lines with the intent of engaging in illicit sexual activity. The defendant argued that Rule 413 did not apply because "the offense with which he [wa]s charged . . . d[id] not have as an element the conduct contemplated by Rule 413." *Batton*, 602 F.3d at 1197. We held that the district court properly received evidence under Rule 413 about a prior sexual assault the defendant committed. *Id.* In rejecting the call for a categorical approach, we stated that "[t]he illicit sexual activities involving genital contact . . . clearly fit the conduct described in [18 U.S.C.] § 2243(a), qualifying the activity as a sexual assault pursuant to Rule 413." *Id.* at 1197 (citing Fed. R. Evid. 413(d)(1)). We also

17

observed that "the charged sexual activity also meets Rule 413's internal definition of sexual assault, which is 'contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person.'" *Id.* (quoting Fed. R. Evid. 413(d)(2)). And in rejecting another of the defendant's arguments against Rule 413's application, we reiterated that "[the defendant]'s conduct meets Rule 413's definition of sexual assault." *Id.* at 1198.

Clay's attempts to retcon *Batton* are unpersuasive. Clay argues that Rule 413 applied there only because the case involved transporting a *minor* across state lines with the intent to engage in illegal sexual activity. Clay says that an adult cannot engage in consensual sex acts with minors, but consensual commercial sex acts between adults can form the basis for a conviction under § 2421. And so unlike the § 2423 offense at issue in *Batton*, Clay concludes, both his kidnapping and transporting a person in interstate commerce to engage in illicit sexual activity charges here do not "necessarily entail[] any sexual assault of any kind or even any conspiracy or attempt to engage in sexual assault." Aplt. Br. at 35.

But all of this misses the key point: *Batton* did not rely on the elements of the charged § 2423 offense to reach its conclusion that Rule 413 applies. *See* 602 F.3d at 1197–98. Rather, *Batton* held Rule 413 applied because the defendant's "activities" fell within Rule 413, *id.* at 1197, or that "[the defendant]'s *conduct* me[t] Rule 413's definition of sexual assault," *id.* at 1198 (emphasis added). We thus read *Batton* as demanding a circumstance-specific approach to Rule 413.

18

Even without the benefit of *Batton*, however, we would reject Clay's calls for a categorical approach, because Rule 413's text indicates that when the Rule speaks of "sexual assault," it uses the term in reference to specific circumstances of conduct, not in reference to laws or generic crimes.[6]  Rule 413 applies "[i]n a criminal case in which a defendant is accused of a sexual assault," Fed. R. Evid. 413(a), and it defines "sexual assault" as "a *crime* under federal law or under state law *involving*" any of five potential categories of *conduct*, Fed. R. Evid. 413(d) (emphases added); *see* Fed. R. Evid. 413(d)(5) (referencing the "conduct described in subparagraphs (1)-(4)"). Boiled down, "sexual assault" under the Rule means "a crime . . . involving [certain conduct]," the sort of language we have said "directs our attention not to the terms of [a] statute but to [ ] underlying conduct." *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1087 (10th Cir. 2005) (discussing "[t]he phrase 'an offense consisting of conduct'");[7] *see also United States v. Escalante*, 933 F.3d 395, 404 (5th Cir. 2019)

---

[6] Rules 413, 414, and 415 are direct products of Congress.  *See* Pub. L. No. 103-322, 108 Stat. 1796 (1994) (codified at 42 U.S.C. §§ 13,701, *et seq.* (1994)). "We interpret the legislatively enacted Federal Rules of Evidence as we would any statute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993) (citation omitted).  When we are called to determine whether a statute contemplates a "categorical approach" or a "circumstance-specific approach," we set out to discern "whether Congress referenced a generic crime or a defendant's specific conduct." *United States v. White*, 782 F.3d 1118, 1130 (10th Cir. 2015).

[7] The words "crime" and "offense" equally do not foreclose a circumstance-specific interpretation.  *See Nijhawan v. Holder*, 557 U.S. 29, 33–35 (2009).  This is relevant not only because it bridges the gap between the phrase at issue here and that discussed in *Martinez-Hernandez*, but also because Clay at times appears to rely on the word "offense" to support his argument that Rule 413 contemplates a categorical approach.  The word "offense" has appeared in some of our prior cases interpreting Rule 413, because that word used to be in Rule 413.  Before Rule 413 was "amended as part of the restyling of the Evidence Rules" in 2011, Fed. R. Evid. 413, advisory

("'[I]nvolving conduct' verbiage is consistent with circumstance-specific inquiries."). If Rule 413 were meant to focus on laws and elements, an easy way to have expressed that desire would be to not use the word "involving," but, instead, a phrase like "that has as an element" or "that prohibits." *See Martinez-Hernandez*, 422 F.3d at 1087 ("'That has as an element' asks us to look at the elements of the statute of conviction; 'that prohibits' asks us to look at what the statute prohibits."). Rule 413 also makes no mention of "elements," and its only reference to a specific substantive criminal code chapter is immediately preceded by "any conduct prohibited by." Fed. R. Evid. 413(d)(1); *cf. United States v. Leaverton*, 895 F.3d 1251, 1254 (10th Cir. 2018).

The Seventh and Eighth Circuits have also understood Rule 413 to focus on conduct, rather than elements. In *United States v. Foley*, the defendant faced charges of child pornography production, distribution, and possession and transporting a minor across state lines to engage in a sex act. 740 F.3d 1079, 1087 (7th Cir. 2014). He argued the "categorical approach" applied to decide whether his crimes fit within

---

committee notes to 2011 amendments, Rule 413(a) stated that the Rule applied "[i]n a criminal case in which the defendant is accused of *an offense of* sexual assault," Pub. L. No. 103–322, 108 Stat. 2136 (emphasis added).

The old text does not change our understanding of the current text. The 2011 amendment to Rule 413 was "intended to be stylistic only," with "no intent to change any result" substantively. Fed. R. Evid. 413, advisory committee notes to 2011 amendments. And, unsurprisingly, the old language also does not suggest a focus on whether "sexual assault" appears as an element in a criminal statute. Like how the current Rule 413(d) defines "sexual assault," the pre-restyle Rule 413(d) defined the phrase "offense of sexual assault" to mean "a crime . . . that involved" the same five categories of conduct in today's Rule 413(d). Pub. L. No. 103–322, 108 Stat. 2136.

Rule 413, and "because the government could prove all of his charged crimes without proving that he committed an actual sexual assault, . . . the definition set forth in Rule 413 was not satisfied." *Id.* The court rejected the argument, explaining:

> The focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a person who has engaged in the covered conduct is likely to engage in it again. Rule 413 uses statutory definitions to designate the covered conduct, but the focus is on the conduct itself rather than how the charges have been drafted.

*Id.* The Eighth Circuit rejected the same argument most recently in *United States v. Ahmed*, where the defendant was charged with kidnapping. 119 F.4th 564 (8th Cir. 2024). The court explained, "for [Rule 413] to apply, [the defendant] need not have been charged with any particular offense. What matters is whether the offense he was charged with involved conduct that Rule 413(d) deems to be sexual assault. [The defendant]'s kidnapping offenses did involve that kind of conduct." *Id.* at 568; *see also United States v. Blazek*, 431 F.3d 1104, 1108–09 (8th Cir. 2005). We keep with these well-reasoned decisions.[8]

---

[8] We note that the leading treatise takes a different view. It is of the view that "'involving' must mean as an element of the crime, not merely as a circumstance of its commission." 23 Charles A. Wright, Arthur R. Miller, & Victor J. Gold, *Fed. Prac. & Proc. Evid.* § 5384 (2d ed. 2025 update). This is so, not because of text, but consequence: if specific circumstances are what count, then "a purse snatching would 'involve' sexual assault if the mugger grabbed the victim's purse and, in the ensuing struggle, the defendant's crotch comes in contact with the victim," but "there is no reason to believe that Congress intended to treat muggers as sex offenders." *Id.*

We must disagree. As we have explained (even setting our decision in *Batton* to the side), Rule 413's text points toward a circumstance-specific understanding, one that other circuits have persuasively adopted. And, in our view, the treatise's concern is already quelled by a separate rule. The remedy for any odd applications of Rule 413 is not to artificially constrict its text on the front end, but, instead, to rely on Rule 403 on the back end to exclude the evidence in particular odd cases.

Clay tries to squeeze the categorical approach out of the word "accused" in Rule 413(a), *see* Aplt. Br. at 31–33, but all "accused" does is limit the focus of the required circumstance-specific approach to the conduct underlying the charges in the case. Even spotting Clay that the word "accused" connotes "a formal process" like criminal proceedings, *see id.* at 31, that does not mean that objects of the verb "accused" must always refer to statutes or elements. It is natural to describe someone as "accused" of a generic crime (e.g., "The defendant is accused of robbery") or as "accused" of engaging in certain conduct on a particular occasion (e.g., "The defendant is accused of stealing $10,000 from the bank"). Whether a phrase using the verb "accused" supports a categorical or circumstance-specific understanding, therefore, will depend on *what* a person is "accused" of. Rule 413 speaks of a defendant "accused of a sexual assault," Fed. R. Evid. 413(a), and, as explained, "sexual assault" under Rule 413 means specific conduct.

The Seventh Circuit's cases illustrate the point. In *United States v. Courtright*, 632 F.3d 363 (7th Cir. 2011), the court grappled with the term "accused" in Rule 413. The defendant there was charged with production of child pornography, among other crimes. *Id.* at 367. The district court interpreted "accused" to trigger Rule 413's application "when a defendant has been verbally accused of sexual assault during the course of an investigation into a separate offense." *Id.* at 368. The Seventh Circuit

---

Generally, the more attenuated the charge and criminal acts are from sexual assault, the less relevant and more unfairly prejudicial the admission of prior sexual evidence will be. *See United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (discussing the factors that go into Rule 403 balancing in the sexual assault context).

22

disagreed and held that "Rule 413 uses the term 'accused' in the more narrow, technical sense generally invoked throughout the federal rules," as referring to the charges in the case. *Id.* at 368–69.

But in holding that "accused" requires a focus on the charges in the indictment, the Seventh Circuit never suggested that Rule 413 requires looking to the statute charged in the indictment to see whether it has "sexual assault" as an element. The court did just the opposite: right after its "accused" discussion, the court previewed the question of when an indictment includes a Rule 413 "sexual assault" and suggested that the answer requires a circumstance-specific analysis. The court observed that Rule 413 defines "sexual assault" "quite expansively," and so the court could "imagine an argument that [the defendant]'s charge of production of child pornography 'involved' a sexual assault because [the victim] initially reported that [the defendant] touched her vagina during the photo shoot." *Id.* at 369 n.2. To be sure, *Courtright* left open the question of precisely how to interpret "involving" in Rule 413.[9] But the Seventh Circuit went on to answer that question in *Foley*, holding that whether someone is accused of "sexual assault" under the Rule turns "on the conduct itself rather than how the charges have been drafted." 740 F.3d at 1087.

To sum up, Rule 413 applies when the conduct underlying the charges in the case "involv[es]" "sexual assault"—i.e., the five types of conduct set out in Rule

---

[9] The *Courtright* court did not need to decide whether the charges there "involved" a sexual assault (which would have been an alternative basis to affirm the district court's decision to admit the evidence); the court found that any error in the district court admitting the Rule 413 evidence was harmless. *See* 632 F.3d at 369.

23

413(d)(1)–(5).  Rule 413 does not require Clay's desired categorical approach.  Clay does not argue that Rule 413 does not apply here under a circumstance-specific approach, so rejecting the categorical approach is enough to reject this point of error.

**B.**

Clay next argues that the district court should have excluded Doe 2's testimony under Federal Rule of Evidence 403.  "Whether 'to exclude evidence under Rule 403 is within the sound discretion of the trial court[] and will be reversed only upon a showing of a clear abuse of that discretion.'"  *United States v. Perrault*, 995 F.3d 748, 764 (10th Cir. 2021) (quoting *Guardia*, 135 F.3d at 1331).

**1.**

Rule 403 permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Unfair prejudice in the Rule 403 context "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, advisory committee notes to 1972 proposed rules.  The "starting point" of the Rule 403 analysis in a Rule 413 case is "that evidence offered under Rule 413 is not *unfairly* prejudicial simply because it is offered to show a propensity to commit sexual assault.  While the evidence is prejudicial when offered for that purpose, that prejudice is not unfair since the rule makes the evidence admissible for that very purpose."  23 Charles A. Wright, Arthur R. Miller, & Victor J. Gold, *Fed. Prac. &*

24

*Proc. Evid.* § 5387 (2d ed. 2025 update) (emphasis in original).

When applying Rule 403 to Rule 413 evidence, "the district court must make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007). The court then proceeds with a specialized version of the Rule 403 balancing test that we set forth in *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998). First, the court considers the probative value of the proffered evidence by looking to the four "*Enjady* factors": (1) how clearly the prior act has been proved; (2) how probative the evidence is of the material fact it is admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself of any less prejudicial evidence. *Id.* Of these, "no single factor is dispositive." *Perrault*, 995 F.3d at 766 (quotation omitted). Second, the court weighs the *Enjady* factors against the prejudicial "dangers" by assessing three more factors: (1) how likely is it such evidence will contribute to an improperly based jury verdict; (2) the extent to which such evidence will distract the jury from the central issues of the trial; and (3) how time consuming it will be to prove the prior conduct. *Enjady*, 134 F.3d at 1433. The exclusion of relevant evidence under the *Enjady* test should be "infrequent[], reflecting Congress'[s] legislative judgment that [such] evidence normally should be admitted." *Id.* (internal quotation marks omitted); *see Benally*, 500 F.3d at 1090.

**2.**

The district court held that a jury could find by a preponderance of the

25

evidence that Clay's assaults of Doe 2 occurred, found that all four *Enjady* factors supported admissibility and weighed them against the dangers, and, ultimately, decided to admit Doe 2's testimony.  On appeal, Clay disputes the district court's assessment of the first, second, and fourth *Enjady* factors.  He also suggests that the district court did not do enough to address unfair prejudice.  As we explain, none of Clay's arguments persuades us that the district court clearly abused its discretion in not excluding Doe 2's testimony under Rule 403.

The first *Enjady* factor is "how clearly the prior act has been proved."  *Enjady*, 134 F.3d at 1433.  The district court found that "based on [Doe 2]'s proffered testimony, a jury could find that Clay committed the sexual assaults against [Doe 2]. That is, [Doe 2]'s proffered testimony is sufficient to show the prior acts probably occurred."  App'x Vol. I at 35 (footnote and citation omitted).

Clay argues that the district court failed to account for the fact that Doe 2's allegations were "many years old," "had been formally recanted," and there "was no corroboration of the allegations."[10]  Aplt. Br. at 37–38.  Each argument fails.  First, the court acknowledged that many of Clay's sexual assaults against Doe 2 were over half a decade old, but the court also noted that Clay had sexually assaulted Doe 2 just

---

[10] Clay also avers that "there were many inconsistencies in [Doe 2]'s accounts . . . that cast doubt on the clarity with which the prior act had been proved."  Aplt. Br. at 38.  But Clay does not identify or locate for us those "inconsistencies," so Clay has waived this argument.  *Cf. United States v. McClatchey*, 217 F.3d 823, 835–36 (10th Cir. 2000) (finding waiver where appellant argued district court erroneously admitted evidence under non-hearsay rule but "fail[ed] to identify the specific statements which he [ ] contend[ed] were wrongly admitted or . . . provide citations to the record where these statements might be found").

months before Clay assaulted Doe 1.  Second, Doe 2 explained why she (falsely, she said) recanted her allegations:  Clay scared and threatened Doe 2 with horrifying stories about what might happen to her family if she did not.  Third, Doe 2's allegations do not need corroboration to be considered credible and thus prove, by a preponderance of the evidence, that Clay indeed assaulted her.  *See United States v. Samuels*, 493 F.3d 1187, 1192 n.7 (10th Cir. 2007).  The district court did not abuse its discretion in holding that Doe 2's testimony proved with sufficient clarity that Clay sexually assaulted her on multiple occasions.[11]

The second *Enjady* factor is "how probative the evidence is of the material fact it is admitted to prove." *Enjady*, 134 F.3d at 1433.  In assessing this factor, we consider "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Benally*, 500 F.3d at 1090–91 (quotation omitted).  The district court admitted Doe 2's testimony to prove "Clay's intent when he crossed state lines with [Doe 1]." App'x Vol. I at 35.  The court concluded that this factor "weigh[ed] heavily in favor of admissibility." *Id.* at 36.

Clay lodges his grievances in the "similarity" and "time lapse" considerations.

---

[11] With these arguments, Clay might also (or instead) be arguing that the court failed to make "a preliminary finding that a jury could reasonably find that [his abuse of Doe 2] occurred by a preponderance of the evidence." *See Benally*, 500 F.3d at 1090; *cf.* Aplt. Br. at 38 ("[I]t is most accurate to say that the alleged prior act had not been proved at all in any forum.").  For the reasons we just gave, we disagree.

First, Clay urges, Doe 2's allegations were "highly dissimilar" from Doe 1's, because Doe 2 did not "testify that she was kidnapped, transported, or handcuffed by [him]," and "there are fundamental differences between sexual assaults alleged by family members, and the kidnapping of a complete stranger." Aplt. Br. at 38–39. Even accepting those differences, there were significant similarities between Doe 1 and Doe 2's respective allegations: (1) Clay vaginally, anally, and orally penetrated both Does 1 and 2 with his penis, without their consent; (2) Clay used personal lubricant in assaulting Does 1 and 2; and (3) perhaps most important, Clay repeatedly told Does 1 and 2 they had to be a "good girl." App'x Vol. II at 348, 350, 351, 354, 355, 501, 505, 506, 509. Second, we reject any "time lapse" argument for a reason we just discussed: although some of Clay's assaults of Doe 2 occurred many years before the charged conduct here, Doe 2 also testified that Clay sexually assaulted her less than six months before Clay did the same to Doe 1. *See also United States v. Mercer*, 653 F. App'x 622, 628 (10th Cir. 2016) (unpublished) (cataloguing our "time lapse" caselaw).[12] The district court did not clearly abuse its discretion in concluding that Clay's assaults of Doe 2 were neither too remote nor too dissimilar to be admissible.

The fourth *Enjady* factor is "whether the government can avail itself of any less prejudicial evidence." *Enjady*, 134 F.3d at 1433. The district court held that the government "c[ould ]not avail itself of any less prejudicial evidence." App'x Vol. I at 36. Clay disagrees because the government "had 117 exhibits," a testifying victim,

---

[12] We cite *Mercer* for its persuasive value. *See* 10th Cir. R. 32.1(A).

and "evidence of physical injuries" to Doe 1.  Aplt. Br. at 38.  The government

responds that it "nearly always has" a victim and exhibits, meaning Clay's theory

would never permit Rule 413 witnesses.  Aple. Br. at 43.  And the physical-injuries

evidence, the government adds, needed the support from Doe 2's testimony to prove

Clay's intent with Doe 1, because Clay testified he and Doe 1 engaged in consensual

sex, and the sexual assault nurse examiner testified that Doe 1's "injuries could have

occurred from consensual sex" or from "sexual assault."  App'x Vol. II at 466.

Even if the district court erred in its conclusion on this factor, we could not

hold that its overall decision in weighing the factors was an abuse of discretion.  *See*

*Perrault*, 995 F.3d at 766 ("In considering the [*Enjady*] factors, no single factor is

dispositive." (internal quotation marks omitted)).  Notwithstanding the government's

other evidence, the court's decision to also admit Doe 2's testimony fell within the

"bounds of permissible choice" in these circumstances.  *See Silva*, 889 F.3d at 709

(quotation omitted).  Because the other three *Enjady* factors weighed in favor of

admissibility (as explained or as Clay has not contested), and because the decision to

admit the evidence would have been reasonable even if the fourth factor weighed in

Clay's favor, the district court did not abuse its discretion.  *See Mercer*, 653 F. App'x

at 629.

The steps the district court took to mitigate undue prejudice confirm that its

decision to admit Doe 2's testimony was not an abuse of discretion.  On this score,

Clay suggests that Doe 2's testimony had an "unfair impact" on the jury and led to an

improperly based jury verdict based not on facts and evidence, but on considerations such as "emotions." *See* Aplt. Br. at 36, 38.  We disagree.

We have held that district courts can adequately minimize the risk of potential jury bias from Rule 413 witnesses by issuing limiting instructions, *see Perrault*, 995 F.3d at 770; *Benally*, 500 F.3d at 1093, and the district court did just that here.  In its order announcing its Rule 403 decision, the court invited the parties to craft limiting instructions "as necessary so that [Doe 2's testimony] w[ould] not contribute to an improperly[ ]based jury verdict."  App'x Vol. I at 35–36.  And at trial, the court instructed the jury:  "You are here to decide whether the Government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged.  *The defendant is not on trial for any act, conduct, or crime not charged in the indictment.*"  App'x Vol. IV at 1056 (emphasis added).  This instruction tracks those we have held were sufficient to inform a jury that it could not convict a defendant based solely on a belief that the defendant committed prior bad sexual acts.  *See Perrault*, 995 F.3d at 770; *Benally*, 500 F.3d at 1089, 1093.

The district court acted within its discretion in admitting Doe 2's testimony.

## V.

Finally, we turn to Clay's arguments that the district court erred in limiting his ability to cross-examine Jane Doe 2 on a variety of topics.  We do not reach the merits of Clay's arguments, because he has waived them through inadequate briefing.

## A.

"It is well-settled that arguments inadequately briefed in the opening brief are

waived." *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (brackets and internal quotation marks omitted). Federal Rule of Appellate Procedure 28 states that an appellant's opening brief "must contain, under appropriate headings and in the order indicated . . . the argument, which must contain: appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). "Consistent with this requirement, we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). We thus "will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," in the opening brief. *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted). We also will not consider issues raised for the first time in a reply brief, *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019), or issues raised in a "cursory fashion" in the opening brief "and then developed" in a reply, *Martinez*, 92 F.4th at 1233 n.4.

**B.**

Clay appears to argue that the district court erred in prohibiting him from impeaching Doe 2 with (1) her mental health history, (2) prior allegations of sexual abuse she had made, (3) her improper receipt of funds from Clay, and (4) her prior inconsistent statements.[13]

---

[13] Clay also raised a cumulative-error argument for the first time in his reply, which, consequently, is waived. *See Leffler*, 942 F.3d at 1197. But the argument

Clay's argument as to his first three desired lines of questioning reads:

> The district court failed to address how [ ] Clay could "vociferously contest" [Doe 2]'s testimony where it correspondingly prohibited him from referencing or entering evidence regarding [Doe 2]'s mental health history and prior sexual abuse unconnected to allegations of unproven sexual abuse lodged against [ ] Clay. The district court also disallowed [Clay] the opportunity to impeach [Doe 2's] testimony as to her improper receipt of financial funds under the control of [ ] Clay. [Doe 2] was able to testify without any fear of having her testimony poked and prodded to see if its veracity would stand up. That is the crux of impeachment.

Aplt. Br. at 41.

Clay does not explain *why* the district court erred in excluding these lines of questioning, and he does not cite *any* authority on these points. This is a textbook example of "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," which are waived. *Wooten*, 377 F.3d at 1145; *see also Meek v. Martin*, 74 F.4th 1223, 1276 (10th Cir. 2023) (explaining that "an appellant ordinarily must present at least *some* authority that remotely supports his argument" to adequately brief an issue (emphasis in original) (cleaned up)).

Turning to Clay's final, "prior inconsistent statements" argument, he says in his opening brief that "[p]rior inconsistent statements may be used to raise doubts about the accuracy of any testimony or statements at trial with which they conflict, as well as the witness's general credibility." Aplt. Br. at 41. In his reply, Clay explains that this argument is about "contradictions" between Doe 2's trial testimony and her "earlier, more contemporaneous accounts of her accusations" of sexual assault by

---

also fails because Clay fails to demonstrate *any* error.

Clay. Reply Br. at 2–3. In Clay's view, the district court erred by "shut[ting] down much of this impeachment on the puzzling grounds that the previous statements were not made under oath." *Id.* at 3.

Clay has waived this issue because he "nominally raised" it in his opening brief "without supporting argument." *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995). He did not so much as identify the alleged prior inconsistent statements in his opening brief. *Cf. United States v. McClatchey*, 217 F.3d 823, 835–36 (10th Cir. 2000) (finding waiver where appellant argued district court erroneously admitted evidence under non-hearsay rule but "fail[ed] to identify the specific statements which he [ ] contend[ed] were wrongly admitted"). He did not provide his "contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies," Fed. R. App. P. 28(a)(8)(A), until his reply, which is too late. *See id.*; *Martinez*, 92 F.4th at 1233 n.4.

## VI.

For these reasons, we AFFIRM.